UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

**CECILIA "CIA" SEGERLIND,**

      Plaintiff,

v.

**OTTAWA COUNTY, and JASON SHAMBLIN,**
**in his personal and official capacity,**

      Defendants.

Case No. 1:26-CV-2159

Hon. _____

_____

## COMPLAINT AND JURY DEMAND
_____

### COMPLAINT

Plaintiff Cecilia "Cia" Segerlind, by and through her attorneys, Pinsky Smith, PC, state as follows:

### JURISDICTION, VENUE, AND PARTIES

1. This is an action seeking damages to remedy violations of Plaintiff's rights to be free from sex discrimination, and to be free from retaliation for objecting to discrimination. Her claims are brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.* ("ELCRA").

2. Jurisdiction and venue are proper in this Court.

1

3.     Plaintiff is a female individual who resides in Ottawa County, Michigan, within the Western District of Michigan.

4.     Defendant Ottawa County is a unit of municipal government located in the Western District of Michigan.

5.     Defendant Jason Shamblin is a male individual who, upon information and belief, resides in Ottawa County, Michigan. He is currently Defendant Ottawa County's Parks and Recreation Department ("Parks Department") Director.

## FACTUAL ALLEGATIONS

6.     Plaintiff Cia Segerlind began working for Defendant Ottawa County as a Parks Department Secretary in September 2021. When Plaintiff was hired, her job position provided administrative and office support for the County's Parks Department, but the position also included serving as a liaison for the public by answering questions about fees, events, park facilities, and the like. Overall, Plaintiff's position was a combination of office administration, public relations, and organizational support to help ensure the efficient operation of the County Parks systems. At present, Plaintiff's job responsibilities have been largely stripped away from her.

7.     In 2019, Defendant Ottawa County hired Defendant Shamblin from a parks department in Ohio, to replace the prior retiring director who had been in the job for 32 years.

8.     In 2024, Plaintiff initiated talks with her then-supervisor, Ms. Kyle Roffey, and Defendant Shamblin and asked to make changes to her job description

to match how her actual job responsibilities had evolved over time. Plaintiff proposed to Ms. Roffey and Defendant Shamblin that her title and official job description had become outdated based on how her role operated, and because she had been performing duties well beyond the scope of her role and level of compensation. She asked for consideration in changing the job description and increasing her official duties appropriately.

9. In the past, Defendant Shamblin reviewed official job descriptions and compensation with other employees. For example, Ms. Segerlind's male colleague, Aaron Bodbyl-Mast, also was in talks with Defendant Shamblin about restructuring his job description, which was similarly out of alignment with his actual job expectations. Mr. Bodbyl-Mast assisted Plaintiff in her proposal to restructure her job description.

10. Ultimately, Defendant Shamblin agreed to Mr. Bodbyl-Mast's request in the restructuring of his job classification, as well as a raise for said reclassification. In contrast, Defendant Shamblin was unwilling to consider Plaintiff's request for job reclassification or even a review of her job description.

11. Plaintiff then raised concerns with management employees in conversations that she felt Defendant Shamblin fostered a culture in the Parks Department where men are treated better than women, and that their contributions are more and disproportionately valued. She told supervisors that she had noticed this happening to other women throughout the department, in varying levels of authority, and that other females had reported the same observations to her.

3

12.     On May 7, 2025, Plaintiff sent a written communication to Defendant Shamblin; Scott Hawkes, the County's Human Resources Director; Zachary VanOsdol, the assistant HR Director; and Ginny Anderson, who by then had become Plaintiff's supervisor once Ms. Roffey left the County's employment. In that letter, Plaintiff detailed concerns regarding sexual discrimination and retaliation directed toward her in the Parks Department, namely by Defendant Shamblin. Among other examples and concerns, Plaintiff described in writing that she felt there was a culture in the Parks Department where men are treated better than women. She wrote: "Women employees are frequently silenced in meetings.... It is clear that our opinions are not welcomed at the table, while men's opinions are valued as statements of fact... regardless of whether they are accurate or true."

13.     Since Plaintiff's reports of unlawful discrimination, Defendants have progressively stripped Plaintiff of her prior job duties to the point of constructive termination. For example, Plaintiff no longer maintains the Special Use Permit database or the Incident Report database for the Department. She is no longer in charge of managing key card access for the Department. Defendant Shamblin also indicated that he intends for other staff to take over duties like entering "P-Card" data into the Munis system going forward, and he instructed Plaintiff to document standard operating procedures for other staff to do the work instead.

14.     Prior to Plaintiff's verbal reports of unlawful discrimination, Defendants had not provided her a negative performance review or discipline write-up.

4

15.     Before Plaintiff raised concerns about unlawful treatment, her position scheduling was solely on a standard first-shift Monday-Friday work period. She has now been reassigned to a schedule that includes Saturdays and requires her to report to two new supervisors at an entirely new location. Plaintiff has school-age children and the role having solely weekday, first-shift hours was an important feature of it for her. County management was and is fully aware of this and knows of the negative impact a demoted role requiring Saturday work has on her family life.

16.     Consequently, Defendants have shifted Plaintiff into what is essentially a new, markedly less appealing job. At the same time, Defendants systemically moved another employee hired to a different job title, Operations Secretary (Parks), to assume many of Plaintiff's former duties with no Saturday work, to the extent that the new employee has for all practical purposes moved into Plaintiff's prior job. This is Defendants' attempt to replace Plaintiff without actually terminating her, but while constructively terminating Plaintiff as a matter of law.

17.     After these significant changes to Plaintiff's job position, she filed a written notice with Defendant County's then-Human Resources Director, Scott Hawkes, and Defendant Shamblin, per County policy, detailing the discriminatory overall culture of the Department and reporting that this change occurred in retaliation for her prior assertion of unlawful discrimination. Mr. Hawkes then conducted a cursory, wholly inadequate investigation of her claims, in which he violated County Equal Employment Opportunity Policy by, among other things, not

interviewing all witnesses. He also failed to subject Defendant Shamblin to any sort of meaningful questioning, compared to the hours of interrogating Plaintiff had to endure from Mr. Hawkes. Most notably, though, Mr. Hawkes failed to interview Plaintiff's direct supervisor, Ginny Anderson, even though Plaintiff asked that Mr. Hawkes interview Ms. Anderson (and even though a direct supervisor like Ms. Anderson would normally be an obvious person to be interviewed in this type of investigation). With Plaintiff's reassignment, Ms. Anderson is no longer supervising Plaintiff. Instead, one of Plaintiff's new supervisors, Nick Smith, is a close male ally of Defendant Shamblin who moved from Ohio and the same parks department that Defendant Shamblin came from.

18.     On January 14, 2025, Plaintiff applied for the Executive Assistant position to the County Administrator. She was never contacted for an interview. The following day, Plaintiff was encouraged by Kelli Rantz, Talent Acquisition Analyst in County HR, to apply for the Operations Secretary (Parks) position, which held the precise job description as her current role but with a different title. However, an employee in the Parks Department informed Plaintiff that Mr. Boerger said that he did not want Plaintiff for this role and indicated that Plaintiff would not be considered. Mr. Boerger is another close associate of Defendant Shamblin, as they also held prior positions together in the same Ohio parks department prior to coming to Ottawa County.

19.     At the time when Plaintiff was considering applying for other job positions, Plaintiff's prior supervisor, Ms. Anderson, also advised Plaintiff that it

6

would not make sense to have her apply for nearly the same position she held at the time. But now, the employee who was selected for the Operations Secretary (Parks) role works in the Parks Operations Center, and is not on the Saturday rotation schedule. Notably, the Operations Secretary (Parks) job title no longer exists after just a short period, and that employee's job title is now Secretary (Parks) – the same as Plaintiff. Upon information and belief, Defendants replaced Plaintiff but attempted to disguise the replacement because they understood the fact of the retaliatory motive would be obvious.

20.    Furthermore, in Plaintiff's job reassignment, one of her two new supervisors, Nick Smith, also worked for Defendant Shamblin in Butler County, Ohio and was selected by Defendant Shamblin to apply for the new role of Coordinator of Visitor & Business Services. The transfer to different supervisors who were aligned through past history with Defendant Shamblin was another adverse employment action initiated by Defendants after Plaintiff reported unlawful discrimination.

21.    On February 27, 2025, Plaintiff applied for an open position with Defendant County, the Administrative Assistant to Corporate Counsel, and provided Nealy Molhoek, Coordinator of Natural Resources Management, and Lisa Olson, incumbent retiring staff, as references. Defendant County never contacted Plaintiff for an interview.

22.    On April 1, 2025, Plaintiff stopped into the County HR office to ask why she has been unable to secure interviews for any other administrative positions

7

in the county. Two days later, she was given one hour of notice to meet with Defendant Shamblin and Ms. Anderson. Defendant Shamblin began the meeting by asking, "Are you aware that people don't think you are a team player?" The rest of that conversation led by Defendant Shamblin made Plaintiff reasonably believe that he has blackballed her from other County positions or advancement opportunities.

23.    On April 18, 2025, Defendant Shamblin reconvened another surprise meeting with Plaintiff, this time with Sarah Allen from the County's HR Department in attendance as well. Defendant Shamblin said the meeting was a chance for Plaintiff to "put all of [her] concerns on the table" and talk through a path forward. However, this was not a meaningful opportunity for Plaintiff to be heard, since Defendant Shamblin spent the meeting continuing to berate Plaintiff. Defendant Shamblin presented three spurious allegations of insubordination against Plaintiff and informed her that she would be receiving formal disciplinary paperwork. Defendant Shamblin alleged in the meeting that he could fire her if he wanted to, but he was not going to yet. Defendant Shamblin also questioned Ms. Anderson's longevity with the County and whether she would stay in her job, and said the blame if Ms. Anderson left should be on Plaintiff. Defendant Shamblin also said that he thought Ms. Segerlind was "extremely difficult to work with," which is why he did not assign projects to her.

24.    Plaintiff provided information and documents to Mr. Hawkes to contradict the veracity of the allegations in Defendant Shamblin's write-up. However, Defendant Shamblin's write-up remains in her personnel file and has not

8

been reversed based on the evidence she provided. Mr. Hawkes also implicitly affirmed it by swiftly and erroneously concluding that her report of retaliation and discrimination was unfounded. Plaintiff submitted a written appeal to the then-County Administrator of the write-up, but her appeal was summarily denied as well.

25.    Upon information and belief, multiple other current and former female employees share Plaintiff's sentiments about working with Defendant Shamblin, which was also information that Plaintiff shared with Mr. Hawkes. Plaintiff presented facts that she believed demonstrated that when Defendant Shamblin finds certain women "difficult to work with," he punishes them, ostracizes them, and pushes them out of County employment in a discriminatory manner.

26.    Upon information and belief, Mr. Hawkes did not seek to question current or former female employees to see if they shared Plaintiff's sentiments about the working environment.

27.    Upon information and belief, at the time that Defendant County provided Mr. Hawkes with the agency and authority to direct its Human Resources responses by conducting investigations of reports of discrimination and retaliation like Plaintiff's, Defendant County knew that Mr. Hawkes' work was subpar. Defendant County hired Mr. Hawkes to be the HR Director when a prior County Commission Chair, Joe Moss, forbade the prior interim County Administrator, Jon Anderson, from hiring the candidate believed to be the best qualified choice, former interim HR Director Zac VanOsdol. Mr. Anderson and the hiring committee

unanimously selected Mr. VanOsdol to be hired as the permanent HR Director, but Mr. VanOsdol had reported potentially unlawful actions by then-Deputy County Administrator Ben Wetmore, who was politically aligned with Chair Moss. Mr. Anderson resigned as interim County Administrator after then-Chair Moss directed that Mr. VanOsdol be passed over for HR Director. Mr. Wetmore became interim County Administrator and immediately hired and started Mr. Hawkes as HR Director, even though he was underqualified for the position.

28.    Defendants should not have relied upon Mr. Hawkes' advice and directions as HR Director as to decisions related to Plaintiff's employment, working conditions and/or opportunities. Defendants and Mr. Hawkes also should not have papered over Plaintiff's reports that sex discrimination as to women in her department was widespread and not limited to her, and then retaliated against her for raising those concerns. Defendants knew that they should not rely on Mr. Hawkes' conclusions, but they did so anyway.

29.    Defendants' actions as to Plaintiff's working conditions constituted significantly adverse employment actions such that a reasonable person would have felt compelled to resign. Defendants imposed these conditions with the intent of making Plaintiff resign.

## COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *et seq.* – SEX DISCRIMINATION

30.    Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

31.    Defendants violated Title VII by maintaining a hostile work

10

environment in the Parks Department characterized by sex discrimination and negative treatment of employees based on sex. Defendants have also violated Title VII by pushing women out of County employment in a discriminatory manner based on sex.

32.    Plaintiff has suffered irreparable harm, in that she suffered adverse employment actions based on her sex, continues to face unlawful discrimination based on her sex in her employment, and will continue to suffer harm unless the relief requested herein is granted.

### Statutory Prerequisites

33.    Pursuant to 42 U.S.C. § 2000e–5(e), Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).

34.    EEOC advised Plaintiff by letter dated April 29, 2026, that she was entitled to institute a civil action within 90 days of receipt of said letter, in accordance with 42 U.S.C. § 2000e–5(f)(1).

### COUNT II – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *et seq.* – RETALIATION

35.    Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

36.    Defendants violated Title VII when they detrimentally changed Plaintiff's employment conditions in a material way, in retaliation for her complaints about Defendants' discriminatory behavior based on Plaintiff's sex.

37.    Defendants violated Title VII when they instituted a discipline write-up against Plaintiff, endangering her continued employment, and limiting her other

11

opportunities with the County, in retaliation for her complaints about Defendants' discriminatory behavior based on Plaintiff's sex.

38.     Defendants violated Title VII when they denied Plaintiff other advancement in her employment and/or different job opportunities, in retaliation for her complaints about Defendants' unlawful and discriminatory behavior based on Plaintiff's sex.

39.     Plaintiff has suffered irreparable harm and will continue to suffer such harm unless the relief requested herein is granted.

## COUNT III – VIOLATION OF ELCRA - DISCRIMINATION ON THE BASIS OF SEX AND RETALIATION

40.     Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

41.     Defendants violated ELCRA by subjecting her to sex discrimination in all of the ways alleged in prior paragraphs.

42.     Defendants violated ELCRA by retaliating against Plaintiff in all of the ways alleged in the prior paragraphs because Plaintiff made a report of unlawful discrimination.

43.     Defendants violated ELCRA when they drastically changed Plaintiff's work conditions and continuously stripped Plaintiff of her job duties in hopes she would resign her employment. Defendants' treatment of Plaintiff amounts to constructive termination.

44.     As a result of the foregoing, Plaintiff lost employment benefits and will lose future employment benefits, suffered mental anguish, emotional distress,

unfair reputational damage, and undue harm to her career, as well as incurred attorney fees and costs, for which Defendants are liable.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff requests that the Court grant the following relief for the Counts above: declare that Defendants have constructively terminated Plaintiff; order that Plaintiff be returned to her prior employment position and duties with Defendants at with her prior job duties, duty station, and working hours, as well as an appropriate job classification; award Plaintiff economic and compensatory damages in an amount that would fully compensate her for the injuries alleged herein resulting from the violations of Title VII and ELCRA, including but not limited to damages for mental anguish, emotional distress, unfair reputational damage, and undue harm to her career; award Plaintiff exemplary and punitive damages, where applicable; award Plaintiff costs and reasonable attorney fees; award Plaintiff such other relief as may be just and equitable.

PINSKY SMITH, PC
Attorneys for Plaintiff

Dated: July 24, 2026

By: /s/ Sarah R. Howard
Sarah Riley Howard
Shoran Reid Williams
146 Monroe Center St NW, Suite 418
Grand Rapids, MI 49503
(616) 451-8496
showard@pinskysmith.com
swilliams@pinskysmith.com

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiff hereby demands same.

PINSKY SMITH, PC
Attorneys for Plaintiff

Dated: July 24, 2026

By: /s/ Sarah R. Howard
Sarah Riley Howard
Shoran Reid Williams
146 Monroe Center St NW, Suite 418
Grand Rapids, MI 49503
(616) 451-8496
showard@pinskysmith.com
swilliams@pinskysmith.com

14